IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCUS L. HUDSON,

    Plaintiff,                    No. CIV S-09-2328 CKD P

    vs.

ANDREW NANGALAMA, et al.,       ORDER AND

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. At the relevant period of time, defendants Nangalama and Bal (defendants) were employed by the California Department of Corrections and Rehabilitation (CDCR) at California State Prison, Sacramento (CSP-Sac). They move for summary judgment.[1]

I. Plaintiff's Allegations

        On August 7, 2008, plaintiff arrived at CSP-Sac from High Desert State Prison. At that time he was taking Percocet for injuries to his back, neck and shoulders. Shortly after

---

[1] Plaintiff filed an opposition to defendants' motion on March 22, 2011. Defendants filed a reply on March 29, 2011. Then, on April 7, 2011, plaintiff filed a document titled "Statement of Undisputed Facts Supporting A Motion For Summary Judgment." Plaintiff attaches several exhibits to this document. Because this document was not timely filed [see Local Rule 230(L)] and plaintiff did not seek leave to file the document late, it, and the attached exhibits, will not be considered.

arrival, plaintiff was referred to defendant Dr. Nangalama. Defendant Nangalama was aware of plaintiff's injuries to his back, neck and shoulders and that plaintiff had been taking Percocet, but refused to provide plaintiff with any pain medication or treatment. Plaintiff suffered withdrawal for ten days as a result of defendant Nangalama not providing plaintiff with anything to relieve the symptoms of withdrawal.

Plaintiff sent numerous "requests for interview" to the Chief Medical Officer at CSP-Sac, defendant Bal, regarding the problems he was having with defendant Nangalama, but those complaints were never answered. Bal was aware of plaintiff's condition.

## II. Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

/////

whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

1  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
2  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
3  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
4  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
5  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
6  show that there is some metaphysical doubt as to the material facts . . .  Where the record taken
7  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
8  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On March 2, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

On February 9, 2010, the magistrate judge previously assigned to this case found that plaintiff's complaint states actionable claims against defendants for violation of the Eighth Amendment.  The Eighth Amendment demands that prison officials not act in a manner "sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  An Eighth Amendment claim based on inadequate medical care has two elements, "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

A medical need is "serious" "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Id. (quoting Estelle, 429 U.S. at 104).

Deliberate indifference to a medical need is shown when a prison official knows that an inmate has a serious medical need and disregards that need by failing to respond reasonably to it.  See Farmer v. Brennan, 511 U.S. 825 (1994).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

4

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

III. Analysis

    A.    Pain Management

Defendants assert there is no genuine issue of material fact that defendants were deliberately indifferent to a serious medical need with respect to plaintiff. In his affidavit, Dr. Nangalama indicates he first visited with and evaluated plaintiff on August 8, 2008. Among other things, defendant Nangalama determined that plaintiff suffered from: 1) Hepatitis C; 2) back pain; 3) chest pain; and 4) testicular pain. Defendant Nangalama indicates that during this first evaluation plaintiff was still taking Percocet. In his opinion, Percocet is not an appropriate medication for a patient with Hepatitis C because Percocet is difficult on the liver. Accordingly, defendant Nangalama removed Percocet as a medication for plaintiff and substituted Gabapentin which relieves pain. The fact that Gabapentin was prescribed almost immediately after plaintiff arrived at CSP-Sac is confirmed in his medical records.[2] Mot., Ex. A, at 3.

    In September, 2008, defendant Nangalama further evaluated plaintiff's need for pain medication and prescribed Tylenol 3, Celebrex and Methadone.

Defendant Nangalama asserts, and medical records attached to his affidavit confirm, that plaintiff was seen numerous times by defendant Nangalama and others between the time he arrived at CSP-Sac and the time this action was filed. Nangalama asserts that plaintiff remained on various pain medications at all times while an inmate at CSP-Sac and that he was never denied medication to cause harm or pain.

In his affidavit, defendant Bal asserts he has been the Chief Physician and Executive at CSP-Sac since 2007. Bal never treated plaintiff. However, defendant Bal did

---

[2] Apart from the medications prescribed by defendant Nangalama, plaintiff has also received Toradol for chest pain.

review the "care and treatment" rendered to plaintiff and determined that plaintiff was treated appropriately.[3] He did not ignore, avoid, "nor refuse to evaluate or render proper treatment to [plaintiff]." According to Bal, plaintiff's complaints about not being properly medicated are unwarranted as plaintiff's medical records demonstrate he was being properly treated.

Plaintiff fails to attach any evidence to his opposition to defendants' motion for summary judgment and fails to point to anything suggesting he was ever denied effective pain medication. He fails to specifically challenge anything in the affidavits submitted by defendants or the authenticity of the medical records they attach. Plaintiff's allegations that he did not receive pain medication are essentially spurious.[4] As indicated above, plaintiff was treated numerous times after he arrived at CSP-Sac and there is simply nothing to suggest that either defendant was ever deliberately indifferent to pain suffered by plaintiff as a result of his injuries. Plaintiff also fails to point to anything indicating that termination of plaintiff's prescription for Percocet amounts to deliberate indifference, particularly in light of the undisputed evidence that plaintiff was given other pain medication and that Percocet had the potential to exacerbate plaintiff's liver problems .

B.      Percocet Withdrawal

While the court agrees that defendants are entitled to summary judgment with respect to plaintiff's claims regarding lack of pain medication, defendants fail to address plaintiff's claim that he was never given medication to alleviate symptoms of withdrawal from Percocet. Plaintiff reiterates this aspect of his Eighth Amendment claim in his opposition to the motion for summary judgment. While defendant Nangalama acknowledges that he stopped prescribing Percocet, he says nothing about whether he prescribed medication to assist with

---

[3] Indeed, defendant Bal, in his affidavit, concurs with defendant Nangalama's assessment that Percocet is not an appropriate medication for a person with Hepatitis C.

[4] In fact, in his opposition, plaintiff admits he was given Tylenol with Codeine at some point although he also asserts in his opposition that he is allergic to that medication.

6

withdrawal or why such medication was unavailable.[5]  Accordingly, plaintiff will be allowed to proceed on his claim that Nangalama was deliberately indifferent to plaintiff's serious medical needs by discontinuing plaintiff's prescription for Percocet without prescribing something to at least assist with withdrawal.  Since there is nothing before the court suggesting defendant Bal was aware plaintiff's prescription for Percocet was terminated at a time when he could have treated plaintiff for withdrawal or directed that Nangalama do so, the court will recommend that defendant Bal be granted summary judgment with respect to all remaining claims and be dismissed.

      C.     Qualified Immunity

Defendants also argue that they are immune from suit in this action under the doctrine of "qualified immunity."  Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court must answer two questions.  The first is whether the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The second is "whether the right was clearly established." Id.  A negative answer to either question means immunity from suit is appropriate.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As indicated above, there is no genuine issue of material fact before the court as to whether plaintiff's federal rights were violated except as to the issue of whether defendant Nangalama adequately treated plaintiff's withdrawal from Percocet.  Also, as indicated above, plaintiff has a clearly established right under the Eighth Amendment to medical care in prison which does not amount to deliberate indifference to serious medical needs.  Estelle, 429 U.S. at

---

[5] Dr. Nangalama does indicate that he prescribed Methadone for plaintiff, but suggests that it was for pain management.  Mot., Ex. A, at 2.

106. If plaintiff can prove facts demonstrating defendant Nangalama was deliberately indifferent to plaintiff's withdrawal from Percocet, then Nangalama has violated the Eighth Amendment. Accordingly, defendants are immune from suit under the doctrine of "qualified immunity" with respect to all claims except plaintiff's claim regarding Nangalama's treatment of plaintiff's withdrawal from Percocet.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court assign a district court judge to this case.

IT IS HEREBY RECOMMENDED that

1. Defendants' March 8, 2011 motion for summary judgment be granted in part and denied in part as follows:

    A. Denied with respect to plaintiff's claim that defendant Nangalama violated plaintiff's Eighth Amendment rights by terminating plaintiff's prescription for Percocet on or about August 8, 2008 without providing plaintiff with any medication or treatment for symptoms of withdrawal; and

    B. Granted in all other respects resulting in defendant Bal being dismissed from this action.

2. Plaintiff be ordered to serve his pretrial statement within thirty days of any order adopting the above findings and recommendations and defendant Nangalama be ordered to file his pretrial statement within twenty days thereafter.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

////

1  shall be served and filed within fourteen days after service of the objections.  The parties are
2  advised that failure to file objections within the specified time may waive the right to appeal the
3  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 Dated: January 19, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
huds2328.57